AO 106 (Rev. 12/03) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)
AmericaOnLine, Inc.
22000 AOL Way
Dulles, Virginia

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

Case Number: '08 MJ 2014

I, **James Yates**, being duly sworn depose and say:

I am a(n) **Special Agent with Immigration and Customs Enforcement** (Official Title) and have reason to believe that ☐ on the person of or ☑ on the property or premises known as (name, description and/or location)

See Attachment "A" (incorporated herein).

in the **Northern** District of **Virginia** there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment "B" (incorporated herein).

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Evidence, fruits of crime, property designed for use or used in committing criminal offenses

concerning a violation of Title **18** United States code, Section(s) **542 & 371**

The facts to support a finding of probable cause are as follows:

See attached Affidavit of ICE Special Agent James Yates.

Continued on the attached sheet and made a part hereof: ☑ Yes ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

**7/1/08**
Date

at **SAN DIEGO, CALIF.**
City / State

Barbara L. Major — U.S. Magistrate Judge
Name of Judge — Title of Judge

Signature of Judge

## Attachment A

AmericaOnLine, Inc. is an internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 22000 AOL Way, Dulles, Virginia.

**Attachment B**

I. <u>Service of Warrant</u>

The officer executing the warrant shall permit AmericaOnLine, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. <u>Items subject to seizure</u>

All subscriber and/or user information, all electronic mail, images, text messages, instant messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data, electronic files that the subscriber has stored in the subscriber's "briefcase" and "photos" area including but not limited to all documents, images and spreadsheets. and any other files associated with the following accounts and screen names:

ggmcraig@aol.com

The search of the data supplied by AmericaOnLine, Inc. pursuant to this warrant will be conducted as provided in the affidavit submitted in support of this search warrant and will be limited to securing communications and attachments for the period from March 1, 2005 to present, related to the valuation of shipments of mushrooms from Japan to the United States and the payment of Customs duties on the same, the identities of any co-conspirators and all other information reflecting potential violations of Title 18, United States Code, Sections 371 and 542.

# A F F I D A V I T

STATE OF CALIFORNIA     )
                        )
COUNTY OF SAN DIEGO     )

I, James Yates, being duly sworn, hereby depose and state:

I am a Special Agent for the United States Immigration and Customs Enforcement having been duly sworn, depose and say:

1. I am employed as a Special Agent with the United Stated Immigration and Customs Enforcement (ICE) of the Department of Homeland Security, and have been so employed since May 2006. Previously, I was employed by the United States Customs Service, which was later reorganized as the United States Customs and Border Protection, as an Officer since September 2002. I have attended the 23-week training at the Federal Law Enforcement Training Center located in Glynco, Georgia, for Immigration and Customs Enforcement Special Agents, as well as their 11-week United States Customs Service inspector training program, and their 2-week advanced fraud training, a course devoted solely to Customs fraud.

2. The information contained within this affidavit is based upon my personal observations, experience, knowledge and discussions with other agents, employees of the agency by which I am employed with as well as employee's from Customs and Border Protection, present and former employee's of the company being investigated, as well as the review of documents and other evidence obtained in the course of this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. I am conducting an investigation into individuals alleged to be making the entry of goods by means of a false statement, in violation of Title 18, United States Code, Section 542, and conspiring to do the same, in violation of Title 18, United States Code, Section 371.

4. Section 542 of Title 18 of the United States Code states that "Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means

1  of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance,
2  or makes any false statement in any declaration without reasonable cause to believe the truth of such
3  statement, or procures the making of any such false statement as to any matter material thereto without
4  reasonable cause to believe the truth of such statement, whether or not the United States shall or may
5  be deprived of any lawful duties; Shall be fined for each offense under this title or imprisoned not more
6  than 2 years, or both.

7  5.  This affidavit is made in support of an application for a warrant to search the internet
8  service provider, AmericaOnline, Inc., located as described in Attachment A, for records relating to the
9  username "ggmcraig@aol.com," as described in Attachment "B" to this application and warrant, for the
10  period from March 1, 2005, to the present, which constitute evidence, fruits, and instrumentalities of
11  violations of federal criminal law, namely, Title 18, United States Code, Sections 371 and 542.

12  6.  In December 2007, I received information alleging that Golden Gourmet Mushrooms,
13  Inc. (GGM) is undervaluing importations of mushrooms through a double-invoicing scheme with
14  Japanese supplier Hokuto Corporation (HC). The Government Accountability Project, a non-
15  government entity, provided copies of documents relating to the importation of mushrooms by GGM
16  to Immigration and Customs Enforcement. These documents included copies of purchase orders,
17  invoices, shipping information, entry documentation and wire transfer information.

18  7.  I examined these documents with Supervisory Import Specialist Deanna Boldt, who has
19  examined thousands of U.S. Customs entry documents and participated in numerous investigations
20  involving the valuation of merchandise. We verified that the information on the invoices and entry
21  documents provided by the Government Accountability Project matched what was found in the Customs
22  Automated Commercial System. We reviewed purchase orders between GGM and HC which bore a
23  considerably higher value than what was declared on the Entry Summary, as well as copies of wire
24  transfers from Union Bank of California, confirming that GGM actually paid the higher prices shown
25  on the purchase orders, all provided by the Government Accountability Project. For example, we
26  reviewed shipping invoice number 463 provided to Customs with the Entry documents on October 7,
27  2006. The invoice submitted to Customs reflected 1,700 cartons of mushrooms valued at $12,360, with
28  a declared duty of $3,110.66. We also reviewed the confirmation order between GGM and HC for

invoice number 463, which reflected the sale of 1,700 cartons of mushrooms valued at $32,985, and records of a wire transfer from GGM to HC on November 21, 2006, of $32,985. Based on a true value of $32,985, the duty that should have been paid was $6,597, or a loss of duty of approximately $3,487 on this single shipment.

8. According to records from the Customs Automated Commercial System, GGM, located at 2033 Marilyn Lane, San Marcos, California, began importing mushrooms from HC of Japan in March of 2005. HC has been the sole international supplier of mushrooms for GGM since that time. The mushrooms are listed on the entries using two separate Harmonized Tariff Schedule numbers used to describe mushrooms, fresh or chilled. A review of the past importing history of GGM disclosed 159 importations made from 2005 through 2007 using these two Harmonized Tariff Code numbers. All of these entries were shipped from Japan by HC, and entered the United States at the port of Los Angeles. Nippon Express is the Customs broker that handled the shipment and filing of entry documentation into the United States.

9. On January 30, 2008, I interviewed Thomas Kevin Finnerty, a former employee of GGM. Finnerty stated that he was employed from approximately July of 2005 to October of 2007 at GGM as the sales manager. He stated that GGM was owned and operated by Craig Anderson and Nick Conner. Finnerty said that Anderson made and implemented all decisions at GGM. Finnerty stated that when he was hired, GGM already had a contract in place to import mushrooms from HC.

10. Finnerty stated that he was a chief point of contact at GGM regarding shipments of mushrooms from HC. Finnerty stated that much of the business between GGM and HC was conducted by email. Finnerty's primary contact at HC was a man named Ted Yamamoto, Finnerty stated that Yamamoto handled the arrangements for HC regarding the importations of mushrooms. I showed Finnerty copies of the documents provided by the Government Accountability Project and he confirmed that those documents appeared to be some of the same documents that he had processed for orders between GGM and HC. Finnerty was asked about the difference in the value on the confirmation order from HC and the invoice supplied to Customs and Border Protection ("CBP"), with the entry documents. Finnerty stated that during his employment at GGM all invoices supplied to CBP were undervalued by

1  approximately 50% and that the true value of the shipments could be found on the confirmation orders
2  sent from HC to GGM.

3  11.    On Tuesday April 8, 2008 I executed a federal search warrant, issued in the Southern
4  District of California, at the commercial business office of GGM, located at 2033 Marilyn Lane,
5  San Marcos, California. Craig Anderson, Owner and Chief Executive Officer of GGM was present at
6  that location and agreed to be interviewed regarding the importation of mushrooms. Craig Anderson was
7  advised of his Miranda rights, voluntarily waived them and signed a written consent form.

8  12.    During the interview I asked Anderson if he had a copy of the sales contract between
9  GGM and HC. Anderson stated that he might have a copy inside his AOL account, furthermore he stated
10 that he had saved many of the correspondences concerning the importation of mushrooms inside this
11 account. I observed Anderson log onto an AOL account with the name "ggmcraig," I asked Anderson
12 if he minded me watching and he told me that he did not mind and that he had nothing to hide. Anderson
13 showed me numerous folders that he had in his AOL account. Several of the folders had email that dealt
14 specifically with the importation of mushrooms from HC. Anderson opened several stored messages that
15 dealt with importations of mushrooms while looking for a copy of the sales contract. Anderson stated
16 that the AOL account was his primary email account and the one he used in correspondence regarding
17 the importation of mushrooms.

18 13.    I reviewed numerous hard copies of emails that were seized from the business office of
19 GGM, during the execution of the search warrant on April 8th. Most of the emails that discuss pricing
20 between GGM and HC or invoice values for customs were either to or from the username "ggmcraig."
21 For example; an email dated April 01, 2005, from: ggmgraig@aol.com, to: m.hidaka@weconnner.co.jp,
22 within the body of the message it states "GGM accepts Hokuto terms of $.70 and $.80 for Buna and
23 Maitake respectively plus duty by GGM a/c." Comparison of these prices with purchase orders and
24 copies of wire transfers show that this is the price that is actually paid between GGM and HC for those
25 types of mushrooms to Customs and Border Protection.

26 14.    I reviewed an email dated Aug 26, 2005, from: t.yamamoto@hokto-kinoko.co.jp, to:
27 ggmcraig@aol.com, the email is addressed to Craig and discusses several issues regarding the
28 importation of mushrooms, issue number 2 states "Custom px (line break) We lower px to

4

1  USD0.35/100g for buna & bunapi, USD0.40/100g for maitake." I compared the date of this message
2  with copies of the invoices presented to CBP and noticed that at this time GGM began declaring the
3  prices discussed in this email on those types of mushrooms to Customs and Border Protection, this price
4  was lower than the actual price paid by GGM for the mushrooms. Prior to this email GGM was declaring
5  USD0.40 for buna & Bunapi and USD0.50 for maitake to Customs and Border Protection.

6  15.    On April 16, 2008 I submitted a preservation letter to AOL LLC for the user name
7  "ggmcraig" requesting that AOL LLC preserve any and all subscriber information, profiles, account
8  contents, email records (saved mail, sent mail, received mail, deleted mail, drafts, folders, etc.), log
9  records of account access and any identifying Internet Protocol ("IP") addresses.

10  16.    I examined copies of emails, the sale contract, confirmation orders, invoices, other
11 documentation from the search warrant and documentation from Customs and Border Protection records
12 with Customs Import Specialist Boldt. We determined that the loss of revenue, due to unpaid duties, on
13 one hundred and twenty-five commercial entries of mushrooms made by GGM from March of 2005
14 through August of 2007 to be $564,341.79 dollars.

15  17.    On April 30, 2008, I interviewed Jeri Rastello, the former Bookkeeper for GGM. During
16 the interview Rastello stated that Craig Anderson would receive emails regarding importations and
17 recognized the username "ggmcraig" as the email name he used in correspondence.

18  18.    AmericaOnLine ("AOL") is an Internet company which, among other things, provides
19 electronic communication services to its subscribers. AOL's electronic mail service allows AOL
20 subscribers to communicate with other AOL subscribers and with others through the Internet. AOL
21 subscribers access AOL's services through the Internet.

22  19.    Subscribers to AOL use screen names during communications with others. The screen
23 names may or may not identify the real name of the person using a particular screen name. Although
24 AOL requires users to subscribe for a free AOL account, AOL does not verify the information provided
25 by the subscriber for its free services.

26  20.    At the creation of a AOL account and for each subsequent access to the account, AOL
27 logs the IP address of the computer accessing the account. An IP address is a unique address through
28 which a computer connects to the Internet. IP addresses are leased to businesses and individuals by

Internet Service Providers. Obtaining the IP addresses that have accessed a particular AOL account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

21.   As a federal agent, I am trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of AOL are not. I also know that the manner in which the data is preserved and analyzed may be critical to the successful prosecution of any case based upon this evidence. Computer Forensic Examiners are trained to handle digital evidence. AOL employees are not. It would be inappropriate and impractical, however, for federal agents to search the vast computer network of AOL for the relevant accounts and then to analyze the contents of those accounts on the premises of AOL. The impact on AOL's business would be severe

22.   Therefore, I request authority to seize all images, text messages and other content from the AOL accounts, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of AOL, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow AOL to make a digital copy of the entire contents of the accounts subject to seizure. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

23.   Analyzing the data to be provided by AOL requires special technical skills, equipment and software. It also can be very tedious. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

24. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained; criminals can use code to avoid keyword searches and mislabel files, encrypt files, deliberately misspell certain words and take other steps to defeat law enforcement.

25. All forensic analysis of the recovered data will be directed exclusively to the identification and seizure of information within the scope of this warrant.

26. Based on the foregoing, there is probable cause to believe the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 371 and 542 and will be found on the at the premises to be searched as provided in Attachment A.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

Dated: _____ July, 2008.

_____
James Yates, Special Agent
U.S. Immigration and Customs Enforcement

Subscribed to and sworn before me this ___ day of July, 2008.

_____
The Honorable Barbara L. Major
United States Magistrate Judge